```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF ALABAMA
                         SOUTHERN DIVISION

JASON WILEY,                         *
                                     *
     Plaintiff,                      *
                                     *
vs.                                  *    CIVIL ACTION 07-0663-KD-B
                                     *
MICHAEL J. ASTRUE,                   *
Commissioner of                      *
Social Security,                     *
                                     *
     Defendant.                      *
```

## REPORT AND RECOMMENDATION

Plaintiff Jason Wiley ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for period of disability and disability income benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 416 et seq. This action was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Oral argument was held on October 23, 2008. Upon consideration of the administrative record and memoranda of the parties, it is ORDERED that the decision of the Commissioner be **REVERSED AND REMANDED.**

## I.   Procedural History

Plaintiff filed an application for disability benefits on September 23, 2004, alleging disability since March 1, 1999 due to pain and stiffness in his knees, upper and lower back, right shoulder and right arm. (Tr. 39, 40-43, 71-72, 95, 98).

1

Plaintiff's earnings record shows that the claimant has sufficient quarters of coverage to remain insured through September 30, 2004, and was insured through that date.[1] (Tr. 87, 52, 94). Plaintiff's application was initially denied on October 15, 2004 (Id. at 52-53). Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ") (Tr. 59). On May 22, 2006, ALJ Alan E. Michel ("ALJ Michel") held an administrative hearing which was attended by the Plaintiff, his attorney, and a vocational expert. (Tr. 23-50). On June 26, 2006, ALJ Michel issued an unfavorable decision. (Tr. 10-17). Plaintiff appealed the decision, and on August 24, 2007, the Appeals Counsel ("AC") denied Plaintiff's request for review. Thus, the ALJ's decision became final (Tr. 4-6). Plaintiff then filed the instant action which the parties agree is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. § 405(g).

On April 21, 2008, Plaintiff filed a motion to supplement his proposed report and recommendation and to remand this action to the Social Security Administration for consideration of new and material evidence from the Department of Veterans Affairs. (Doc. 13). The Commissioner opposed Plaintiff's request. (Doc. 20) By Order dated April 23, 2008 (Doc. 14), Plaintiff was permitted to

---

[1] Because Plaintiff is insured through September 30, 2004, the "period of consideration" for this appeal is from his alleged onset date of March 1, 1999 through his date last insured, September 30, 2004.

2

supplement the record with a December 4, 2007 Rating Decision from the Department of Veteran Affairs (VA) (Doc. 13-3), a December 13, 2007 VA Rating Decision (Doc. 13-4), and a December 18, 2007 letter from the VA, explaining its decision on Plaintiff's July 2004 Notice of Disagreement (Doc. 13-2).  The Court held in abeyance Plaintiff's Motion to Remand.

**II.   Issues on Appeal**

A.   Whether the ALJ erred in failing to consider a Veterans Administration decision dated December 30, 2003.

B.   Whether the ALJ erred in rejecting the opinion of consulting psychologist Dr. Joseph G. Law, Jr., PhD.

C.   Whether the ALJ erred in finding that Plaintiff does not suffer from a severe mental impairment.

**III. Background Facts**

Plaintiff was born on August 23, 1959 and was 46 years old at the time of the administrative hearing (Tr. 23, 31, 71).  He has a high school education with two years of college.  He spent eighteen years in the U.S. Army, where he worked as a supply manger.  He also has past relevant work experience ("PRW") as an auto parts salesman. (Tr. 102, 98-100, 104-107, 113, 124).  At the May 22, 2006 hearing, Plaintiff testified that in his job as a supply manager, he supervised one person and used a computer.  (Tr. 36-37). Plaintiff further testified that he became disabled on March 1, 1999, while working at Auto Zone.  According to Plaintiff, his knees, shoulder

and back cause him the most problems when working, and his knees are the most problematic. (Tr. 38, 39, 40). Plaintiff further stated that he uses assistive devices such as braces and a cane, and he has shower bars and rails at home. (Tr. 44-45). Plaintiff testified that the medication he gets from the VA helps some with the pain but that he has side effects such as stomach pain. (Tr. 46). Additionally, Plaintiff testified that the VA referred him for an evaluation with a psychologist, who has treated him for depression, and that the depression affects his physical activities and his ability to be around people. (Tr. 47-48).

**Analysis**

    **A.**    **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. This Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[2] A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth

---

[2]This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (finding that substantial evidence is defined as "more than a scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]"). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. DIST. LEXIS 10163 (S.D. Ala. 1999).

B.  **Discussion**

An individual who applies for Social Security disability benefits must prove his disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability. 20 C.F.R. §§ 404.1520, 416.920.[3]

---

[3]The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of

In the case sub judice, the ALJ determined that Plaintiff met the non-disability requirements for a period of disability and disability insurance benefits and was insured for benefits through September 30, 2004.  (Tr. 14, 16).  He concluded that while Plaintiff has the severe impairment of degenerative disc disease, this impairment does not meet or medically equal the criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4. Id.   The ALJ found that Plaintiff's allegations regarding his limitations were not totally credible (Tr. 20). The ALJ found that Plaintiff retains the residual functional capacity ("RFC") for sedentary work, which involves lifting and/or carrying no more than 10 pounds at a time and occasionally lifting

---

impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. Id. at 1005.  Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

or carrying articles like docket files, ledgers, and small tools. (Tr. 19).  The ALJ concluded that Plaintiff would not be able to perform any past relevant work but that considering his age, education, work experience, and RFC, he could perform other jobs that exist in significant numbers in the national and local economy. (Tr. 21).

The relevant medical evidence of record[4] includes treatment notes and test results from Central Alabama Veterans HCA ("HCA"). A March 9, 1999 x-ray of Plaintiff's lumbosacral spine showed degenerative disc disease at CP/C4, C4/C5, and C5/C6, and was diagnosed as a minor abnormality (Tr. 132).  A March 9, 1999 x-ray of Plaintiff's cervical spine showed mild degenerative spondylosis of the cervical spine, and was diagnosed as a minor abnormality (Tr. 130).  A March 10, 1999 CT of Plaintiff's lumbar spine was essentially normal. (Tr. 131).

Plaintiff was treated at HCA on April 16, 2001, for low back pain and knee pain.  It was noted that he had a history of arthritis, degenerative disk disease ("DDD") at C4-5 and C5-6, anemia, and headache.  He was described as in no distress with vital signs stable.  His physical exam was normal, and he was assessed

---

[4]The period of consideration ends on September 30, 2004, and the issues raised by Plaintiff on appeal relate to the VA rating decision and Dr. Law's mental evaluation. Thus, while the entire transcript has been reviewed, only the evidence of record related to Plaintiff's period of consideration, and related to the disabilities set forth in the December 2003 VA rating decision and Dr. Law's mental evaluation is specifically set forth here.

7

with arthritis, stable on Motrin; hyperlipidemia; and anemia, stable. (Tr. 190, 193). Plaintiff returned to HCA on December 31, 2002, complaining of pain in his neck, shoulders and feet, and of chronic bilateral knee pain, stating that his knees sometimes give out and he has to use a knee brace. He was described as in no distress with vital signs stable. His physical exam was normal, and he was assessed with arthritis, hyperlipidemia, and anemia. It was noted that he was on no medications, and that he ambulated into the clinic by himself without noticeable distress. (Tr. 186-187, 192). An x-ray of Plaintiff's left knee on this day showed osteoarthritis, status post surgery of the left knee. It was diagnosed as a minor abnormality. An x-ray of Plaintiff's right shoulder showed minimal osteoarthritic changes of the inferior right glenohumeral joint. It too was diagnosed as a minor abnormality. (Tr. 128, 129).

Plaintiff underwent a physical examination on September 3, 2003. Range of motion in his right shoulder was 98 flexion (180 is normal), abduction was 102 degrees (180 is normal), external rotation was 56 degrees (90 is normal) and internal rotation was 52 degrees (90 is normal). His left shoulder range of motion was normal. As for his knees, Plaintiff had pain on palpation in the medial and lateral meniscus region and crepitus with movement in both knees, more significant on the left. Range of motion of the left knee was flexion 110 (normal is 140) and extension was 2 degrees (normal is 0). The right knee had flexion of 126 degrees

8

(normal is 140), and extension was normal.  As for his lumbar spine, Plaintiff had muscle spasms into the external abdominal oblique muscle on the right, and pain with active and passive movement.  He had negative straight leg raising.  Flexion was 84 degrees (normal is 95), extension was 26 degrees (normal is 35 degrees), lateral flexion was 32 degrees (normal is 40 degrees), and rotation on the right was 22 degrees and to the left was 30 degrees (normal is 35).  Plaintiff was able to  balance on toes and heels with increasing knee pain, but could not squat due to knee pain.  He had increased pain with tandem walking, and both his arm and leg strength were 4 on the left and 3 on the right (normal is 5).   (Tr. 162-163).

The report describes the results of a right shoulder MRI as "OS acromionale[5] and downsloping lateral margin of the acromion with cystic subchondral changes in the humeral head.  Decreased distance from the coracoid process[6] and lesser tuberosity with tendonosis of the subscapularis tendon.  Anterior impingement."  The diagnoses were listed as:

> Status post trauma of the right knee with residual degenerative joint disease with mild functional loss due to pain
>
> Status post reconstruction of the left knee secondary to internal derangement with residual degenerative joint

---

[5]Acromion is the projection of the shoulder blade that forms the point of the shoulder.  See www.medterms.com (Last visited October 20, 2008).

[6]Coracoid process denotes a process of the scapula. See www.medterms.com (Last visited October 20, 2008).

> moderate to mildly-severe functional loss due to pain
>
> Mechanical low back pain with muscle spasms and positional paresthesia, mild to mildly-moderate functional loss due to pain
>
> Right shoulder impingement with tendonitis of the subscapularis tendon, moderate to mildly-severe functional loss due to pain.

(Tr. 161-163, 211). X-rays dated September 3, 2003, of Plaintiff's knees showed bilateral joint disease and status post left knee surgical change, diagnosed as minor abnormality. An x-ray of Plaintiff's lumbosacral spine was normal. (Tr. 126, 127).

Office notes from HCS dated October 15, 2003, reflect that Plaintiff complained that his right ear was stopped up and that he had bad headaches that were not helped with Motrin.  (Tr. 183).  His physical exam was normal. (Tr. 179).  Office notes from HCS dated December 23, 2003, reflect  that Plaintiff complained that his head, knees, lower back, eyes, ear and right shoulder hurt.  He is described as being in no distress with stable vitals.  His physical exam was normal.  Plaintiff was assessed with arthralgia, tension headache, anemia, and cerumen[7], and was prescribed Motrin PRN, and Debrox.  (Tr. 171-174).

Plaintiff was treated at HCS on August 27, 2004, for abdominal discomfort and right arm and back pain.  He indicated that he took no medications and that he had a history of arthritis. He was

---

[7]Cerumen is ear wax.  www.medicinenet.com.  (Last visited October 20. 2008).

referred to his primary care physician. (Tr. 164-166).

On October 15, 2004, the State Agency physician, Robert O. Harris, completed a Physical Residual Functional Capacity Assessment, in which he opined that Plaintiff can lift 20 pounds occasionally and 10 pounds frequently, and stand, walk or sit for about six hours in an eight-hour period. He further indicated that Plaintiff is limited to occasional pushing and pulling with his lower extremities, that he can occasionally climb ramps, stairs, ladders, ropes and scaffolds, kneel, crouch, and crawl, and that he can frequently balance and stoop. He did not impose any manipulative, visual communicative, or environmental limitation; however, he did restrict Plaintiff to light work due to degenerative arthritis in his knees. (Tr. 195-203).

Joseph G. Law, Jr. conducted a psychological evaluation of Plaintiff on June 17, 2005 at the request of the Agency. He found that achievement tests showed Plaintiff's reading comprehension and math ability at a 6.7 grade level, and a full-scale IQ of 75. (Tr. 214). Dr. Law listed his impressions as mood disorder secondary to medical condition, with depressive features, 60% VA service connected disabilities, and chronic illness as a psychosocial stressor. He assigned Plaintiff a GAF[8] of 45-50. He referenced

---

[8] The Global Assessment of Functioning (GAF) is a numeric scale used to rate the social, occupational and psychological functioning of adults. A GAF of 45-50 indicates serious symptoms or any serious impairment in social, occupational or psychological functioning. www.en.wikipedia.org/wiki (Last

the VA rating and opined that Plaintiff's activities of daily living are mildly limited, his social and occupational functioning and concentration, persistence and pace are markedly limited, and that he is unable to adapt to work settings, stating that this assessment is based on Plaintiff's self-reported history, records, and observation and testing.  (Tr. 217).  He further opined that Plaintiff is "not feasible for training, education or job placement services."  (Tr. 218).

Dr. Law completed a Mental Residual Functional Capacity Questionnaire on November 30, 2005, in which he opines that Plaintiff is moderately limited in his activities of daily living and is markedly limited in his ability to maintain social functioning, his ability to understand, carry out and remember instruction, to respond appropriately to supervision, co-workers, and work pressures and to complete work related activities in a normal workday or workweek.  He further indicates that Plaintiff is moderately limited in his ability to perform simple or repetitive tasks, and that it is expected that Plaintiff would experience repeated episodes of decomposition in work or work-like settings, causing him to withdraw from the situation or experience exacerbation of signs and symptoms for a period lasting at least

---

visited August 22, 2008).

two weeks.  According to Dr. Law, these limitations have lasted or can be expected to last for 12 months or longer, and Plaintiff experienced these symptoms and limitations at least as early as June 17, 2004.  (Tr. 221-222).

In a letter dated January 2, 2004, the VA notified Plaintiff that it had determined that Plaintiff has a 10% disability due to right shoulder positional paresthesia, 20% disability due to status post right knee injury, 20% disability due to left knee internal derangement, and 20% disability due to mechanical low back pain. (Tr. 88-89).   In the letter, the VA referenced Plaintiff's September 2003 examination.

As noted supra, after initiating this action, Plaintiff sought and was granted permission to file documents from the VA.  These included a December 4, 2007 VA Rating Decision, a December 13, 2007 VA Rating Decision, and letter from the VA dated December 18, 2007.[9]

---

[9]The VA Rating Decision dated December 4, 2007 states that Plaintiff's 20% disability for chronic lumbar strain is increased to 40%, effective August 7, 2007; his 20% right knee disability, previously evaluated as status post injury, is evaluated as 10% disability, effective August 7, 2007, for right knee degenerative joint disease with limitation of flexion and pain on motion and 20% disability for right knee instability for a total of 30% right knee disability; his left knee disability, previously evaluated as a 20% disability for left knee internal derangement, status post reconstructive surgery with degenerative changes, is evaluated as 10% disability, effective August 7, 2007, for left knee degenerative changes with limitation of flexion and pain on motion and 10% disability, effective August 7, 2007, for left knee internal derangement, status post reconstructive surgery with instability, for a total of 20% left knee disability; and

**Whether the ALJ erred in failing to consider a Veterans Administration decision dated December 30, 2003.**[10]

Plaintiff argues that the ALJ "failed to consider . . . the impact of a Veterans Administration (VA) decision. . . ," and then that the ALJ failed to discuss the December 2003 VA rating decision in his decision. (Doc. 11 at 5-6). "A VA rating is certainly not binding on the Secretary, but it is evidence that should be considered and is entitled to great weight." Rodriquez v. Schweiker, 640 F. 2d 682, 686 (5th Cir. 1981). The SSA regulations

---

his right shoulder disability, previously evaluated as 10% right shoulder positional paresthesia is evaluated as chronic right shoulder strain and increased to 20%, effective November 28, 2006. (Doc. 13-3 at 1-2).

The VA Rating Decision dated December 13, 2007 includes a grant of 50% service connection for major depressive disorder, an entitlement to individual unemployability, and a service connection for surgical scars. In a letter dated December 18, 2007, the VA notified Plaintiff that it had determined the he suffered a 50% disability due to major depressive disorder as of September 14, 2005. The letter further states that, as of August 7, 2007, he is assigned a 10% disability due to his right knee degenerative joint disease, with limitation of flexion and pain on motion, and 20% disability due to right knee instability, for a total of 30% right knee disability. As for the left knee, Plaintiff is assigned a 10% disability due to left knee degenerative changes with limitation of flexion and pain on motion, and 10% disability due to left knee internal derangement status post reconstructive surgery with instability, for a total of 20% left knee disability. Plaintiff is further assigned a 20% disability due to chronic right shoulder strain. The letter further states that Plaintiff is granted a 100% entitlement, beginning September 14, 2005, due to his inability to work. (Doc. 13-2 at 1-4).

[10]Because remand is recommended, the other issues raised in Plaintiff's brief have not been addressed.

14

specify that a decision by any non-governmental or governmental agency about whether an individual is disabled is based on its own rules and does not constitute a SSA decision about whether an individual is disabled.  20 C.F.R. § 404.1504.  The ALJ must "state specifically the weight accorded to each item of evidence and why he reached that decision." Cowart v. Schweiker, 662 F. 2d 731, 735 (11th Cir. 1981).  However, the Eleventh Circuit has recognized that the ALJ may implicitly make a determination. Kemp v. Astrue, 2009 U.S. App. LEXIS 1341 (11th Cir. Jan. 26, 2009)(quoting Hutchison v. Bowen, 787 F. 2d 1461, 1463 (11th Cir. 1986).

In Kemp, the plaintiff argued that the ALJ failed to give great weight to the disability ratings assigned him by the VA.  In rejecting the plaintiff's claim, the Court held that "The ALJ did not specifically state that he gave great weight to the VA's disability ratings. However, the ALJ continuously refers to the VA's evaluations and disability rating throughout the evaluation process.  The ALJ gave specific reasons for why the VA's 30% disability rating based on PTSD did not qualify the condition as a severe impairment under the SSA guidelines ... The ALJ relied on the VA records and referenced the disability ratings, in addition to the rest of the relevant evidence throughout the decision.  As a result, he implicitly found that the VA disability ratings were entitled to great weight."  Id.; see also Pearson v. Astrue, 271 Fed. Appx. 979 (11th Cir. 2008)("The record establishes that the

administrative law judge considered the rating in his decision and correctly explained that a claimant had to satisfy a more stringent standard to be found disabled under the Social Security Act.")

In the case sub judice, Plaintiff asserts that the "ALJ failed to consider the January 2, 2004 VA disability rating." The Commissioner asserts that while the ALJ did not specifically mention the rating, he thoroughly summarized the evidence from the VA.  A searching review of the ALJ's decision reflects that while he throughly discussed the medical evidence, including the records received from the VA, he makes absolutely no mention of the VA disability rating anywhere in his decision.  Thus, based upon the record before the Court, the undersigned cannot determine whether the ALJ simply overlooked the January 2, 2004 VA rating, or whether he considered it, and implicitly determined that it was not entitled to great weight.  Unlike the facts present in the Kemp and Pearson decisions, in this case, the ALJ does not mention the VA rating, nor does he discuss the fact that a Social Security claimant has to satisfy a more stringent standard in order to be found disabled under the Social Security Act.  Accordingly, this case is due to be remanded.  Upon remand, the ALJ should consider the January 2, 2004 VA disability rating and detail the weight to be accorded the decision.  In addition, upon remand, the supplemental VA records presented by Plaintiff should be reviewed in order to determine whether they constitute material evidence

which has any bearing on Plaintiff's claim for disability during the period in question.

### V. Conclusion

For the reasons set forth, and upon consideration of the administrative record and memoranda of the parties, it is **RECOMMENDED** that the decision of the Commissioner of Social Security, denying Plaintiff's claim for period of disability and disability income benefits **REVERSED and REMANDED** for further proceedings.

The attached sheet contains important information regarding objections to this Report and Recommendation.

**DONE** this **27th** day of **February, 2009.**

                                           **/s/ SONJA F. BIVINS**
                                     **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.  **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(c); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.  **Opposing party's response to the objection.**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection. Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.  **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is

advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                                                                **/s/ SONJA F. BIVINS**
                                             **UNITED STATES MAGISTRATE JUDGE**